IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| GERALDINE FOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-2165-W |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Geraldine Foy, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether she has a severe impairment;
(3)  whether her impairment meets or equals one listed by the Secretary;
(4)  whether the claimant can perform her past work; and

>   (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case, ALJ Charles A. Thigpen determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "hip, leg and neck problems and Depressive Disorder, NOS" are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 21].  The ALJ found that the plaintiff retains the residual functional capacity to perform her "past relevant work as a cleaner/commercial (unskilled/light)."  [R. 27].  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions

about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by

substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 49 years old at the time of the ALJ decision. ALJ Charles Thigpen found the following severe impairments: hip, leg and neck problems and Depressive Disorder, NOS. [R. 21]. On October 21, 2008, the plaintiff's attorney sent her to a consulting psychiatrist, David W. Hodo, M.D., who performed a mental status examination. . If credited, the plaintiff is disabled.

The ALJ gave the following reasons for discrediting Dr. Hodo:

> I give little weight to Dr. Hodo's opinion that the claimant is mentally disabled. Dr. Hodo's MSO is inconsistent with his own narrative. It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

[R. 27]. Earlier in his opinion, the ALJ stated, "In terms of the claimant's alleged Major Depression, the claimant has received no treatment, either inpatient or outpatient, from any mental health professional. The claimant is not on any medication for depression."

[R. 26]. He went on:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.
>
> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

[Id.].

However, there is another psychological opinion in the record, that of the Commissioner's consulting psychologist, Patricia M. Sandusky, Ph.D. The plaintiff was examined by Dr. Sandusky on July 26, 2006. She was diagnosed with Depressive

Disorder NOS, Cognitive Disorder NOS, and Report of Chronic Hip, Leg, and Back Pain.

[R. 192]. Dr. Sandusky's summary and recommendations were:

> Geraldine Foy is a 46 year old female who completed 12th grade in a regular education curriculum. She resides with her parents and has worked for only a 5 year period in her entire life. She is reporting today largely with physical complaints including Chronic Pain in her hips, legs, back, and side. She reports this condition to be disabling as she has difficulty maintaining herself at home without assistance. Ms. Foy reports some depression and affect was consistent with her report. This claimant's memory was poor but inconsistent with her reported background which includes completing 12th grade in a regular education curriculum. <u>She was not considered to be malingering during the interview</u>, and she did present cognitive limitations as a reason for seeking disability benefits. Currently, Ms. Foy has had no intervention in terms of mental health treatment or medication. <u>From a psychological perspective, her condition appears significantly disabling.</u>

[R. 192](emphasis added) In his decision, the ALJ gave a detailed summary of Dr. Sandusky's opinion, but omitted the conclusion that "her condition appears significantly disabling." In fact, the ALJ did not make an explicit finding as to what weight, if any, he was according the opinion of Dr. Sandusky, nor did he discredit that opinion.

Moreover, the opinion of Dr. Hodo, the plaintiff's consulting psychologist, which the ALJ rejected, is entirely consistent with the opinion of Dr. Sandusky, the Commissioner's consulting psychologist, which the ALJ reported but did not consider or discredit. Because Drs. Hodo and Sandusky are specialists in the field of psychology, their opinions are entitled to more weight in this area.[1] Therefore, the reasons given by the ALJ for rejecting the opinion of Dr. Hodo are not supported by substantial evidence.

---

[1] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

Dr. Hodo diagnosed the plaintiff with "Major Depression, Severe." [R. 291]. A diagnosis of severe depression is strongly indicative of an inability to work. For example, the Diagnostic and Statistical Manual of Mental Disorders describes the criteria for assigning the specifier "Severe Without Psychotic Features" to a major depressive episode: "Episodes that are *Severe Without Psychotic Features* are characterized by the presence of most of the criteria symptoms and clear-cut, observable disability (e.g., inability to work or care for children)." 412 (4th Edition, Tex Revision) ("DSM-IV-TR") (italics in original)(emphasis added).

The ALJ chose to rely on a medical expert, Sydney Garner, Ph.D., who:

> . . . testified the record establishes that the claimant has medically determinable impairments, including Major Depressive Disorder, recurrent. There is no other mental diagnosis. The claimant has not received any treatment and she is on no medication. There is no indication of malingering. Dr. Garner opined that this impairment did not meet or equal in severity the criteria of § 12.04 for depression as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Dr. Garner recommended that the claimant receive treatment at a mental health center. Dr. Garner also stated that there is a likelihood of improvement with treatment. Dr. Garner opined that the claimant would have a mild limitation in activities of daily living, moderate limitation in social functioning, and moderate limitation in concentration, persistence or pace. I give substantial weight to this opinion as it is well supported by objective medical evidence and is consistent with the records as a whole.

[R. 26]. He then goes on to adopt the opinion of the State Agency medical consultant, who never once examined the plaintiff. [Id.]. The ALJ's conclusion is not supported by substantial evidence.

The ALJ discounted the opinion of the plaintiff's consultative psychological examiner, concluding that his findings were inconsistent with the record. [R. 27]. Nowhere in his opinion does he discount or find what weight, if any, he was assigning the opinion of the Commissioner's own consultative psychological examiner. "In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). The ALJ's failure to do so is reversible error. Also, the ALJ erred in basing his decision on the opinion of a non-examining, reviewing medical expert over two examining psychologists. This reliance is improper in this Circuit:

> The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had

9

improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the <u>only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself</u> to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and <u>health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it</u>. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and <u>the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight</u>. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians</u>: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer <u>he may not arbitrarily</u>

<u>substitute his own hunch or intuition for the diagnosis of a medical professional</u>.

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .

Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

At the hearing, the VE testified that given the ALJ's stated residual functional capacity for the plaintiff, she could perform the requirements of her past relevant work. [R. 46]. The ALJ's examination of the VE continued:

Q: Do you see the medical source opinion of Dr. Hodo?

A. Yes, sir.

Q: If a hypothetical candidate for employment with those capabilities and limitations do competitive work?

A: I didn't see anything in there that would preclude work, Judge. My earlier testimony would still stand. I saw that just a few moments ago.

Q: The consultative evaluation or the medical source opinion?

A: Oh my goodness, my goodness, my goodness! Okay. That's – beg your pardon, that's on the second and third page. Wow! Dr. Hodo indicated extreme and marked restrictions in every category without exception.

> Q: No jobs. That's all I have.
>
> A: Dr. Hodo, yeah, his narrative was somewhat nonthreatening, but he certainly took her out of work based on his observation of the marked and extreme restrictions. Thank you.

[R. 47-48]. Then the plaintiff's attorney questioned the VE:

> Q: Dr. Sweeny, the testimony of Wow!, is as good of testimony as I've ever heard from an expert witness, and I appreciate that. Dr. Sweeny, Dr. Sandusky examined my client on July 26 of '06, and she said that she had chronic anxiety, poor memory, poor ability to perform simple calculations, poor concentration and attention, poor abstract thinking, poor judgment and reasoning. With that and more, could you, could you testify whether or not she could do jobs based on that consultative examination?
>
> A: The – I will add one other thing on that, because I, because I read that. 4F?
>
> Q: Yes.
>
> A: And the note – those to me were very generalized, they indicated some issues that one would have to deal within an employment setting, and the one note I have is she said significantly disabled, but it's like not sure what that meant. And so my response to the first part of your question and the earlier part of Sandusky's comments would be I would attempt to identify, and I'm prepared to do that, a very routine, unskilled, simple work. I didn't see where it took her out of work, it just presented some problems that would have to be dealt with.
>
> Q: If, if we, if we say poor is the same as Dr. Hodo's extreme, then that would preclude work, would it not?
>
> A: If then, yes, but I , I wouldn't necessarily –
>
> Q: I understand.
>
> A: – equate poor to extreme. Okay.

[R. 48-49]. The court concludes that substantial evidence does not support the ALJ's

decision to ignore the opinion of the Commissioner's consulting psychologist.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 30 September 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.